## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Todd Roth, Individually And<br>On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>ROYAL CARIBBEAN CRUISES LTD.,<br>RICHARD D. FAIN,  BRIAN J. RICE<br>and HENRY L. PUJOL,<br><br>          Defendants | **CIVIL ACTION NO. _____**<br><br>**CLASS ACTION COMPLAINT<br>FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.     This is a federal class action on behalf of purchasers of the securities of Royal Caribbean Cruises Ltd. ("Royal Caribbean" or the "Company") between January 27, 2011 and July 28, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  As alleged herein, defendants published a series of materially false and misleading statements that defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

### JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).   Royal Caribbean maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Todd Roth, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Royal Caribbean at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant **ROYAL CARIBBEAN CRUISES LTD.** is a corporation organized under the laws of the Republic of Liberia, which maintains its principal place of business at 1050 Caribbean Way, Miami, FL 33132-2096.   According to the Company's website, Royal Caribbean is the world's second largest cruise company, with 40 ships and a passenger capacity of approximately 92,300.   The Company also has a 50% joint venture with TUI Cruises.   The ships operate worldwide with a selection of itineraries that call on approximately 400 destinations.

8.      Defendant **RICHARD D. FAIN** ("Fain") is, and during the Class Period was, Chief Executive Officer, Principal Executive Officer and Chairman of the Board of Directors of

2

the Company.  During the Class Period, defendant Fain certified the Company's Form(s) 10-Q and 10-K.  In addition, during the Class Period, defendant Fain sold 200,000 of his personally held securities of the Company, to reap illicit gross proceeds of over $9.3 million.

9.      Defendant **BRIAN J. RICE** ("Rice") is, and during the Class Period was, Chief Executive Financial Officer, Principal Financial Officer and Executive Vice President of the Company.  During the Class Period, defendant Rice signed and certified the Company's Form(s) 10-Q and 10-K.  In addition, during the Class Period, defendant Rice sold over 88,872 of his personally held securities of the Company, to reap illicit gross proceeds of over $4.1 million.

10.      Defendant **HENRY L. PUJOL** ("Pujol") is, and during the Class Period was, Vice President, Principal Accounting Officer and Corporate Controller of the Company.  During the Class Period, defendant Pujol signed the Company's Form 10-K.  In addition, during the Class Period, defendant Pujol sold over 700 of his personally held securities of the Company, to reap illicit gross proceeds of over $35,000.

11.      The defendants referenced above in ¶¶ 8-10 are referred to herein as the "Individual Defendants."

12.      The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Royal Caribbean's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified

3

herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

13.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Royal Caribbean securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the investing public regarding Royal Caribbean's business, operations, management and the intrinsic value of Royal Caribbean securities; (ii) enabled defendants to artificially inflate the price of Royal Caribbean shares; (iii) enabled Royal Caribbean insiders to sell millions of dollars of their privately held Royal Caribbean shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase Royal Caribbean securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired securities of Royal Caribbean between January 27, 2011 and July 28, 2011, inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Royal Caribbean common shares were actively

traded on the New York Stock Exchange.  As of April 18, 2011, the Company had 216,511,000 shares of common stock issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Royal Caribbean  or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Royal Caribbean; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

20.     **FY:10 Results / 2011 Guidance Announced**.  On January 27, 2011, the inception of the Class Period, defendants published a release announcing purported results for the fourth quarter and year end 2010, the period ended December 31, 2010.  This release stated, in part, the following:

> Royal Caribbean Reports Better Than Expected Results and Forward Guidance
>
> Royal Caribbean Cruises Ltd. (NYSE, OSE: RCL) today announced better than expected fourth quarter and full year 2010 results and provided earnings guidance for 2011.
>
> Key Highlights
>
> For the Fourth Quarter 2010:
>
> - Net income was $42.7 million, or $0.20 per share versus $3.4 million, or $0.02 per share in 2009;
>
> - Weather and currency related issues reduced earnings by $0.03 per share, but were more than offset by higher revenues and cost containment;
>
> - Net Yields increased 3.2%, (4.2% on a Constant Currency basis). Absent extreme weather conditions, constant currency Net Yields would have increased 4.7%;

- Net Cruise Costs per APCD ("NCC") were flat, (up 1.0% on a Constant Currency basis).

For the Full Year 2010:

- Net Yields increased 4.2% (4.4% on a Constant Currency basis);

- NCC declined 1.8% (down 1.3% on a Constant Currency basis);

- NCC excluding fuel declined for the third year in a row and were down 1.6%;

- Net income was $547.5 million, or $2.51 per share versus $162.4 million, or $0.75 per share in 2009.

*   *   *

Full Year 2010 Results

Net income for the full year 2010 was $547.5 million, or $2.51 per share, compared to net income of $162.4 million, or $0.75 per share, for the full year 2009. Revenues for the full year 2010 increased 15% to $6.8 billion from revenues of $5.9 billion for the full year 2009. Net cruise costs excluding fuel declined for the third year in a row and were down 1.6%. Despite significant market price increases, fuel costs per metric ton increased only 1% to $493 as a result of the company's hedging program. Since 2005, the company has reduced energy consumption per APCD by 15% and full year 2010 consumption was 1,311,000 metric tons.

21.     Regarding the Company's forward guidance, the January 27, 2011 release also

stated, in part, the following:

2011 Guidance:

- Net Yields are expected to improve 4% to 6% for the full year and 2% to 3% in the first quarter;

- NCC excluding fuel are expected to increase approximately 2% for the full year and the first quarter;

- EPS is expected to be between $3.25 and $3.45 for the full year and $0.10 to $0.15 for the first quarter of 2011, based on current fuel prices and currency exchange rates.

*   *   *

2011 Outlook

7

The company reported that early "WAVE season" bookings have been encouraging and booked load factors and average per diems are ahead of same time last year. On an as reported basis, the company expects net yields to increase between 4% and 6% for the full year and 2% to 3% for the first quarter of 2011. On a Constant Currency basis, Net Yields are forecasted to be up between 4% and 5% for the full year and to increase 1% to 2% in the first quarter of 2011.

On a Constant Currency basis, NCC excluding fuel are forecasted to be up 1% to 2% for the full year and the first quarter of 2011. On an as reported basis, NCC excluding fuel are expected to be up approximately 2% for the full year and the first quarter of 2011.

Based upon the above and current fuel prices and currency exchange rates, the company expects full year EPS will be between $3.25 and $3.45 per share. "Our company continues to focus on costs and improving its financial performance," said **Brian J. Rice**, executive vice president and chief financial officer. "This focus, combined with the improving pricing power of our brands should generate significant earnings opportunities as we move into 2011 and beyond."

22.     In addition to the foregoing, the January 27, 2011 release also quoted defendant Fain, in part, as follows:

> "*These improved results reflect the strong reception our new ships have received along with the solid branding our different cruise brands have enjoyed*," said Richard D. Fain, chairman and chief executive officer. Fain continued, "WAVE is <u>*off to a solid start and supports our earlier confidence in meaningful pricing recovery and record financial performance in 2011*</u>." [Emphasis added.]

23.     Following the publication of the January 27, 2011 release, shares of the Company traded at prices artificially inflated by defendants' false and misleading statements.  Taking advantage of this artificial inflation in the price of Company shares, defendant Fain immediately liquidated over $9 million of his personally held Royal Caribbean shares.

24.     **2010 Form 10-K.**  On February 24, 2011, defendants filed with the SEC the Company's 2010 Form 10-K, for the year ended December 31, 2010, signed by all defendants and certified by defendants Rice and Fain.  In addition to making substantially similar statements concerning the Company operations, including expenses, costs and ratios, as had been published

previously in the January 27, 2011 release, the 2010 Form 10-K also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, as follows:

**Item 9A. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Our management, with the participation of our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this report. Based upon such evaluation, our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer concluded that those controls and procedures are effective to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure and are effective to provide reasonable assurance that such information is recorded, processed, summarized and reported within the time periods specified by the SEC's rules and forms.

**Management's Report on Internal Control Over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rule 13a-15(f). Our management, with the participation of our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on this evaluation, management concluded that our internal control over financial reporting was effective as of December 31, 2010. The effectiveness of our internal control over financial reporting as of December 31, 2010 has been audited by PricewaterhouseCoopers LLP, the independent registered certified public accounting firm that audited our consolidated financial statements included in this Annual Report on Form 10-K, as stated in its report, which is included herein on page F-2.

**Changes in Internal Controls Over Financial Reporting**

There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act Rules 13a-15 during the quarter ended December 31, 2010 that have materially affected or are reasonably likely to materially affect our internal control over financial reporting.

25.     **Certifications.**  In addition to the foregoing, the Company's 2010 Form 10-K also contained certifications by defendants Rice and Fain, that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

<strong>CERTIFICATION</strong>

1.     I have reviewed this annual report on Form 10-K of Royal Caribbean Cruises Ltd.;

2.     Based on my knowledge, *this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading* with respect to the period covered by this report;

3.      Based on my knowledge, *the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant* as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

     a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

     b)     *Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial*

10

*statements* for external purposes in accordance with generally accepted accounting principles;

c)      ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures***, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      ***All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information***; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 24, 2011

/s/ Richard D. Fain
Richard D. Fain
Chairman and  Chief Executive Officer
(Principal Executive Officer)

* * *

Date: February 24, 2011

/s/ Brian J. Rice
Brian J. Rice
Executive Vice President and Chief Financial Officer
(Principal Financial Officer)

In connection with the annual report on Form 10-K for the year ended December 31, 2010 as filed by Royal Caribbean Cruises Ltd. with the Securities and Exchange Commission on the date hereof (the "Report"), Richard D. Fain, Chairman and Chief Executive Officer, and Brian J. Rice, Executive Vice President and Chief Financial Officer, each certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to his knowledge:

1.      the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and

2.      **the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of Royal Caribbean Cruises Ltd**.

Date: February 24, 2011

By:/s/ Richard D. Fain
        Richard D. Fain
         Chairman and  Chief Executive Officer
         (Principal Executive Officer)

By:/s/ Brian J. Rice
         Brian J. Rice
         Executive Vice President and Chief Financial Officer
        (Principal Financial Officer)

                                                        [Emphasis added.]

26.     The statements made by defendants and contained in the Company's January 27, 2011 release and in the Company's 2010 Form 10-K were each materially false and misleading when made, and were known by defendants to be false or were recklessly disregarded as such thereby, for the following reasons, among others:

        (a)     At all times during the Class Period, it was not true that the Company had reported its results in accordance with Generally Accepted Accounting Principles, when in fact, throughout that time, defendants had failed to properly account for interest expenses related to the amortization of financing fees, such that defendants would be required to revise past financial statements to reflect Royal Caribbean's correct accounting;

(b)     At all times during the Class Period, unbeknownst to investors, defendants had materially overstated the Company's profitability by failing to properly account for the Company's results of operations and by artificially inflating the Company's financial results;

(c)     Throughout the Class Period, it was also not true that Royal Caribbean had adequate systems of internal operational or financial controls, such that Royal Caribbean 's reported financial statements were true, accurate or reliable;

(d)     As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP and SEC rules, where defendants had failed to disclose that errors in the previous accounting treatment of interest expense relating to its amortization of certain financing fees would require the revision of the Company's past financial statements to reflect the correct accounting; and

(e)     As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that Royal Caribbean  was operating according to plan, or that Royal Caribbean could achieve guidance sponsored and/or endorsed by defendants.

27.     Taking full advantage of the artificial inflation in the price of Company shares caused as a result of the publication of defendants materially false and misleading statements, throughout February 2011, Company insiders  - - including defendants Fain, Rice and Pujol - - sold millions of dollars of their privately held Royal Caribbean securities.  The sale of Company shares by Royal Caribbean insiders during that time, included in part, the following:

| Insider Transactions Reported – During Class Period | | | | |
|---|---|---|---|---|
| Date | Insider | Shares | Sale / Disposition | Value |
| May 18. 2011 | BAYLEY MICHAEL W | 52 | $40.18 per share. | 2.089 |

| | | | | |
|---|---|---|---|---|
| | Officer | | | |
| Feb 17, 2011 | CHICO BARBIER GONZALO | 43,000 | $46.98 per share. | 2,020,139 |
| | Officer | | | |
| Feb 16, 2011 | GOLDSTEIN ADAM M | 23,191 | $47.34 per share. | 1,097,861 |
| | Officer | | | |
| Feb 16, 2011 | STEIN BRADLEY H | 22,828 | $47.76 per share. | 1,090,265 |
| | Officer | | | |
| Feb 14, 2011 | HANRAHAN DANIEL J | 16,978 | $46.83 per share. | 795,079 |
| | Officer | | | |
| Feb 14, 2011 | RICE BRIAN J | 3,000 | $46.90 per share. | 140,700 |
| | Officer | | | |
| Feb 14, 2011 | RICE BRIAN J | 73,930 | $46.83 - $46.91 per share. | 3,465,000 |
| | Officer | | | |
| Feb 11, 2011 | STEIN BRADLEY H | 258 | $47.38 per share. | 12,224 |
| | Officer | | | |
| Feb 11, 2011 | BAYLEY MICHAEL W | 302 | $47.38 per share. | 14,308 |
| | Officer | | | |
| Feb 11, 2011 | PUJOL HENRY L | 215 | $47.38 per share. | 10,186 |
| | Officer | | | |
| Feb 11, 2011 | KULOVAARA HARRI U | 388 | $47.38 per share. | 18,383 |
| | Officer | | | |
| Feb 11, 2011 | HANRAHAN DANIEL J | 1,695 | $47.38 per share. | 80,309 |
| | Officer | | | |
| Feb 11, 2011 | RICE BRIAN J | 1,606 | $47.38 per share. | 76,092 |
| | Officer | | | |
| Feb 11, 2011 | GOLDSTEIN ADAM M | 2,231 | $47.38 per share. | 105,704 |
| | Officer | | | |
| Feb 10, 2011 | STEIN BRADLEY H | 113 | $46.58 per share. | 5,263 |
| | Officer | | | |
| Feb 10, 2011 | BAYLEY MICHAEL W | 5,569 | $46.26 per share. | 257,621 |
| | Officer | | | |
| Feb 10, 2011 | KULOVAARA HARRI U | 2,048 | $46.58 per share. | 95,395 |
| | Officer | | | |
| Feb 10, 2011 | HANRAHAN DANIEL J | 7,832 | $46.58 per share. | 364,814 |
| | Officer | | | |
| Feb 10, 2011 | RICE BRIAN J | 7,305 | $46.58 per share. | 340,266 |
| | Officer | | | |
| Feb 10, 2011 | GOLDSTEIN ADAM M | 11,014 | $46.58 per share. | 513,032 |
| | Officer | | | |

14

| Feb 9, 2011 | BAYLEY MICHAEL W<br>Officer | 10,037 | $46.69 per share. | 468,627 |
|---|---|---|---|---|
| Feb 8, 2011 | STEIN BRADLEY H<br>Officer | 424 | $46.18 per share. | 19,580 |
| Feb 8, 2011 | GOLDSTEIN ADAM M<br>Officer | 2,660 | $46.18 per share. | 122,838 |
| Feb 8, 2011 | RICE BRIAN J<br>Officer | 2,227 | $46.18 per share. | 102,842 |
| Feb 8, 2011 | HANRAHAN DANIEL J<br>Officer | 2,345 | $46.18 per share. | 108,292 |
| Feb 8, 2011 | KULOVAARA HARRI U<br>Officer | 593 | $46.18 per share. | 27,384 |
| Feb 8, 2011 | PUJOL HENRY L<br>Officer | 380 | $46.18 per share. | 17,548 |
| Feb 1, 2011 | BAYLEY MICHAEL W<br>Officer | 253 | $45.57 per share. | 11,529 |
| Feb 1, 2011 | PUJOL HENRY L<br>Officer | 169 | $45.57 per share. | 7,701 |
| Feb 1, 2011 | KULOVAARA HARRI U<br>Officer | 337 | $45.57 per share. | 15,357 |
| Feb 1, 2011 | HANRAHAN DANIEL J<br>Officer | 855 | $45.57 per share. | 38,962 |
| Feb 1, 2011 | RICE BRIAN J<br>Officer | 804 | $45.57 per share. | 36,638 |
| Feb 1, 2011 | GOLDSTEIN ADAM M<br>Officer | 1,533 | $45.57 per share. | 69,858 |
| Jan 28, 2011 | FAIN RICHARD D<br>Officer | 200,000 | $46.63 per share. | 9,326,000 |
| | **Total Shares Sold =** | **447,172** | **Gross Proceeds =** | **$ 20,908,786** |

28.  **1Q:11 Results Announced**.  On April 28, 2011, defendants published a release announcing purported "Record" setting results for the third quarter of 2011, the period ended March 31, 2011.  This release also stated, in part, the following:

Royal Caribbean Reports First Quarter Results and Updates 2011 Guidance

Royal Caribbean Cruises Ltd. (NYSE, OSE: RCL) today announced better than expected first quarter results and updated guidance for the remainder of 2011.

15

Key Highlights

For the First Quarter 2011:

- Net income was $91.6 million, or $0.42 per share versus, $87.4 million, or $0.40 per share in 2010. Included in the 2010 results was a one-time gain of $85.6 million, or $0.39 per share related to a legal settlement;

- Net Yields increased 4.0% (2.8% on a Constant-Currency basis);

- Net Cruise Costs per APCD ("NCC") were up 0.2% (down 0.1% on a Constant-Currency basis);

- Included in Other Income/(Expense) was an $0.11 per share marked-to-market gain on the company's fuel option portfolio.

*   *   *

First Quarter 2011 Results

Royal Caribbean Cruises Ltd. today announced net income for the first quarter 2011 of $91.6 million, or $0.42 per share. This compares to net income of $87.4 million, or $0.40 per share, in the first quarter of 2010, which included a gain on a legal settlement of $85.6 million, or $0.39 per share. An $0.11 per share marked-to-market gain on the company's fuel option portfolio is included in first quarter 2011 results.

Revenues improved to $1.7 billion in the first quarter of 2011 compared to $1.5 billion in the first quarter of 2010 as a result of capacity increases and yield improvements. Net Yields for the first quarter of 2011 increased 4.0% (2.8% on a Constant-Currency basis). The company saw improvement in both ticket and onboard revenue yields and across all major product groups.

Costs in the first quarter of 2011 were well controlled with most expense categories performing better than expected. While a less significant factor, some timing shifts to later in 2011 occurred. NCC were up 0.2%, and NCC excluding fuel increased 0.8%. Excluding currency impacts, the comparable figures show decreases of 0.1% and increases of 0.6%, respectively.

At-the-pump fuel pricing (including the benefit of the company's hedging program) was very similar to earlier calculations at $511 per metric ton. As previously disclosed, in addition to its fuel hedging activities the company has purchased various fuel options as further protection against rising fuel prices. Unlike its fuel swaps which largely receive hedge accounting treatment, fuel options are marked-to-market to the income statement at the end of each reporting period. During the first quarter of 2011 the value of the company's fuel option

portfolio increased by $24.2 million, or $0.11 per share, and the associated gain was booked to Other Income/(Expense).

29.     In addition to the foregoing, the April 28, 2011 release also quoted defendant Fain, in part, as follows:

> "***The year started off with a roar*** -- **strong bookings, low costs and solid profits -- and in the first quarter *every one of our brands exceeded its forecast,*"** said Richard D. Fain, chairman and chief executive officer. Fain added, "Unfortunately, the events in Northern Africa and Japan have turned what was shaping up as a spectacular year into merely a very good one. Nonetheless, other than adjustments for fuel pricing, ***our earnings guidance for the year is essentially intact despite these dramatic geopolitical events***. The demand for the majority of our products has remained quite strong and even the impacted itineraries have begun to improve." [Emphasis added.]

30.     The Company's April 28, 2011 release also purported to provide 2011 Guidance, in part, as follows:

> 2011 Guidance:
>
> - The company has been able to largely offset higher fuel prices through its hedging strategies as well as the impact of currency exchange rates. The effects of recent geopolitical events in Northern Africa and Japan have also been partially offset by improvements in the company's other itineraries. As a result, full year EPS guidance has been reduced by $0.15 per share to a range of $3.10 to $3.30.

31.     **1Q:11 Form 10-Q.**  On or about April 28, 2011, defendants also filed with the SEC the Company's 1Q:11 Form 10-Q, for the quarter ended March 31, 2011, signed by defendant Rice and certified by defendants Fein and Rice.  In addition to making substantially similar statements concerning the Company operations, including expenses, costs and ratios, as had been published previously, the 1Q:11 Form 10-Q also provided statements concerning the Company's Significant Accounting Policies and the Basis of its Accounting Presentation, in part, as follows:

> **Basis for Preparation of Consolidated Financial Statements**

*The unaudited consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States of America.* Estimates are required for the preparation of financial statements in accordance with these principles. Actual results could differ from these estimates.

All significant intercompany accounts and transactions are eliminated in consolidation. We consolidate entities over which we have control, usually evidenced by a direct ownership interest of greater than 50% and variable interest entities where we are determined to be the primary beneficiary….

*We believe the accompanying unaudited consolidated financial statements contain all normal recurring accruals necessary for a fair statement.* Our revenues are seasonal and results for interim periods are not necessarily indicative of results for the entire year. [Emphasis added.]

32.     **Controls.**   The Company's 1Q:11 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, as follows:

**Item 4. Controls and Procedures**

**Evaluation of Disclosure Controls and Procedures**

Our management, with the participation of our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer, conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Exchange Act Rule 13a-15(e), as of the end of the period covered by this report. Based upon such evaluation, *our Chairman and Chief Executive Officer and Executive Vice President and Chief Financial Officer concluded that those controls and procedures are effective to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submits under the Exchange Act* is accumulated and communicated to management, including our Chairman and Chief Executive Officer and our Executive Vice President and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure and are effective to provide reasonable assurance that such information is recorded, processed, summarized and reported within the time periods specified by the SEC's rules and forms.

**Changes in Internal Control Over Financial Reporting**

*There were no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Exchange Act* Rules 13a-15 during the quarter ended March 31, 2011 that have

materially affected or are reasonably likely to materially affect our internal control over financial reporting. [Emphasis added.]

33.     **Certifications.**   In addition to the foregoing, the Company's 1Q:11 Form 10-Q also contained certifications by defendants Rice and Fein, that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

### CERTIFICATIONS

1.     I have reviewed this quarterly report on Form 10-Q of Royal Caribbean Cruises Ltd.;

2.     Based on my knowledge, *this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading* with respect to the period covered by this report;

3.     Based on my knowledge, *the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows* of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

  a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

  b)     *Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements* for external purposes in accordance with generally accepted accounting principles;

  c)     *Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the*

19

*effectiveness of the disclosure controls and procedures*, as of the end of the period covered by this report based on such evaluation; and

d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)      *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information*; and

b)      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: April 28, 2011

/s/ RICHARD D. FAIN
Richard D. Fain
Chairman and Chief Executive Officer
(Principal Executive Officer)

\*      \*      \*

/s/ BRIAN J. RICE
Brian J. Rice
Executive Vice President and Chief Financial Officer
(Principal Financial Officer)

In connection with the quarterly report on Form 10-Q for the quarterly period ended March 31, 2011 as filed by Royal Caribbean Cruises Ltd. with the Securities and Exchange Commission on the date hereof (the "Report"), Richard D. Fain, Chairman and Chief Executive Officer, and Brian J. Rice, Executive Vice President and Chief Financial Officer, each hereby certifies pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to his knowledge:

1.      *the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934*, and

2.      *the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of Royal Caribbean Cruises Ltd*.

Date: April 28, 2011

By: /s/ RICHARD D. FAIN
        Richard D. Fain
        Chairman and Chief Executive Officer
        (Principal Executive Officer)

By: /s/ BRIAN J. RICE
        Brian J. Rice
        Executive Vice President and Chief Financial Officer
        (Principal Financial Officer)                                    [Emphasis added.]

34.      The statements made by defendants and contained in the Company's April 28, 2011 release and in the Company's 1Q:11 Form 10-Q were materially false and misleading when made, and were know by defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶ 26, *supra*.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION
## OF ROYAL CARIBBEAN  IS BELATED DISCLOSED

35.      On July 28, 2011, defendants shocked and alarmed investors after they published a release that revealed, for the first time, that the Company was performing well below expectations and that errors in the previous accounting treatment of interest expense relating to its amortization of certain financing fees, had resulted in the revision of the Company's past financial statements.   That day, the *South Florida Business Journal* reported, in part, the following:

Royal Caribbean takes beating over accounting issue

21

Royal Caribbean Cruises Ltd. shares took a drubbing Thursday after the company announced some accounting issues along with second quarter results.

Shares of the world's second-largest cruise company were down $3.94, or 11.02 percent, to $31.82 in mid-afternoon trading. Trading was a heavy 8.48 million shares, compared with an average daily volume of 2.78 million.

Yahoo Finance reported that Royal Caribbean (NYSE: RCL) was the day's 11th-biggest decliner.

The accounting revisions overshadowed revenue improving to $1.8 billion in the second quarter from $1.6 billion a year ago as a result of capacity increases and yield improvements. Profit rose to $93.5 million, or 43 cents a share, from $53.7 million, or 25 cents a share.

A press release gave an accounting of what went wrong, but also said a dividend would be reinstated:

- Management identified an error in the previous accounting treatment of interest expense relating to its amortization of certain financing fees and has revised its past financial statements to reflect the correct accounting.

- Second quarter earnings per share were 47 cents before the interest expense revision, but were revised to 43 cents.

The interest revision is forecast to reduce 2011 earnings per share by 20 cents, within a range of $2.85 to $2.95.

36.     Investors were quick to realize that defendants had attempted to slide another $0.10 reduction in full-year earnings under the radar, in conjunction with this press release, completely unrelated to the accounting snafu.  Accordingly, following defendants' belated revelation, analysts at JP Morgan immediately downgraded shares of the Company, from Neutral to Overweight, and slashed its price target to $33 from $48 per share.

37.     The following day, July 29, 2011, the Associated Press reported on the analyst ratings cut and price target downgrade, in part, as follows:

Analyst cuts Royal Caribbean rating, price target

Analyst cuts Royal Caribbean rating, price target on difficulties facing Mediterranean cruises

22

NEW YORK (AP) -- Wall Street analysts are lowering expectations for cruise operator Royal Caribbean Cruises Ltd. on Friday, citing soft demand and difficulties facing its Mediterranean cruises.

\*   \*   \*

JPMorgan Analyst Kevin Milota said that Royal Caribbean's prices will likely be weak for some of its cruises to the Eastern Mediterranean area for the near to intermediate term until unrest in the region starts to stabilize and negative media attention fades. He cut his rating to "Neutral" from "Overweight" and slashed its price target to $33 from $48.

\*   \*   \*

Raymond James lowered its target price from $46 to $39, but maintained its "outperform" rating, saying that outside of the troubled Middle East, "demand remains strong, with Caribbean and Alaska net yields growing double digits."

William Blair & Co. lowered its per-share estimate for this year by 29 cents to $2.91, including interest expenses. It also lowered its 2012 estimate "to better handicap the Mediterranean wild card."

After falling sharply Thursday, Royal Caribbean's shares fell 25 cents to $31.01 in Friday morning trading.

38.     The revelations that the Company had materially misrepresented its financial and operational condition, its controls and procedures and its results of operations, belatedly revealed on July 28, 2011 caused shares of Royal Caribbean  stock to fall precipitously.  As evidence of this, on July 28, 2011, shares of the Company collapsed over 13%, from a close of $35.75 per share to a trading low of just below $31.00 - -  in the single trading day, on very high trading volume of over 11.32 million shares traded.  The following day, July 29, 2011, shares of the Company continued to trade lower, closing just above $30.50 per share, again on high volume of over 4.337 million shares traded.

## CAUSATION AND ECONOMIC LOSS

39.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated the price of Royal Caribbean securities and operated as a fraud or deceit on Class Period purchasers of Royal Caribbean's securities by misrepresenting the Company's financial results.  Over a period of approximately six months, defendants improperly inflated the Company's financial results.   Ultimately, however, when defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, shares of Royal Caribbean  declined precipitously - - evidence that the prior artificial inflation in the price of Royal Caribbean 's shares was eradicated.  As a result of their purchases of Royal Caribbean  stock during the Class Period, plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

40.     By improperly characterizing the Company's financial results and misrepresent-ing its prospects, the defendants presented a misleading image of Royal Caribbean's business and future growth prospects.  During the Class Period, defendants repeatedly emphasized the ability of the Company to monitor and control expenses, and consistently reported expenses and expense ratios within expectations and within the range for which the Company was adequately reserved.  These claims caused and maintained the artificial inflation in the price of Royal Caribbean 's securities throughout the Class Period and until the truth about the Company was ultimately revealed to investors.

41.     Defendants' false and materially misleading statements had the intended effect of causing Royal Caribbean's securities to trade at artificially inflated levels throughout the Class Period  - - the Company's common stock closed above $47.00 per share on February 18, 2011.

42.     On July 28, 2011, however, as investors learned the truth about the Company, and learned that defendants had failed to properly report the Company's financial and operational results, shares of the Company collapsed.  Defendants' belated disclosures had an immediate, adverse impact on the price of Royal Caribbean  shares.

43.     These belated revelations also evidenced defendants' prior falsification of Royal Caribbean 's business prospects due to defendants' false statements.  As investors and the market ultimately learned, the Company's prior business prospects had been overstated as were the Company's results of operations.  As this adverse information became known to investors, the prior artificial inflation began to be eliminated from Royal Caribbean's share price and were damaged as a result of the related share price decline.

44.     As a direct result of investors learning the truth about the Company on July 28, 2011, shares of the Company collapsed over 13%, from a close of $35.75 per share to a trading low of just below $31.00 - -  in the single trading day, on very high trading volume of over 11.32 million shares traded.  The following day, July 29, 2011, shares of the Company continued to trade lower, closing just above $30.50 per share, again on high volume of over 4.337 million shares traded.  These dramatic share price declines, eradicated much of the artificial inflation from Royal Caribbean 's share price, causing real economic loss to investors who purchased this stock during the Class Period.

45.     The decline in price of Royal Caribbean securities at the end of the Class Period was a direct result of the nature and extent of defendants' fraud being revealed to investors and to the market.  The timing and magnitude of Royal Caribbean 's stock price decline negates any inference that the losses suffered by plaintiff and the other members of the Class was caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts

unrelated to defendants' fraudulent conduct.   During the same period in which Royal Caribbean's share price fell almost 15% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

46.     The economic loss, *i.e.* damages suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of Royal Caribbean's stock and the subsequent significant decline in the value of the Company's shares when defendants' prior misstatements and other fraudulent conduct was revealed.   The dramatic decline in the price of Company shares immediately following defendants' belated disclosure is evidenced, in part, by the chart below:



## VIOLATIONS OF GAAP AND SEC REPORTING RULES

47.     During the Class period, defendants materially misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented

the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

48.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R.  210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate.  SEC Rule 13a-13 requires issuers to file quarterly reports.

49.     SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

50.     In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a discussion of any material changes in the registrant's results of operations with respect to the most recent fiscal year-to-date period for which an income statement is provided.  Instructions to Item 303 require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are not necessarily representative of the registrant's ongoing business. Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a company's publicly filed reports with the SEC:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in relationship shall be disclosed.

Paragraph 3 of the Instructions to Item 303 states in relevant part:

The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past. . .

51.     The GAAP requirement for recognition of an adequate provision for foreseeable costs and an associated allowance applies to interim financial statements as required by Accounting Principles Board Opinion No. 28.  Paragraph 17 of this authoritative pronouncement states that:

The amounts of certain costs and expenses are frequently subjected to year-end adjustments even though they can be reasonably approximated at interim dates. To the extent possible such adjustments should be estimated and the estimated costs and expenses assigned to interim periods so that the interim periods bear a reasonable portion of the anticipated annual amount.

52.     The Company's financial statements contained in the quarterly reports filed with the SEC on Forms 10-Q for the quarterly periods throughout the Class Period were presented in a manner that violated the principle of fair financial reporting and the following GAAP, among others:

(a)     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1).

(b)     The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

(c)     The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

28

(d)     The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2).

(e)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

(f)     The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

(g)     The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies and have been removed, resolved, or have become immaterial (APB Opinion No. 28).

(h)     The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

53.     In addition, during the Class Period, defendants violated SEC disclosure rules:

(a)     defendants failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. § 229.303), and that failure to disclose the information rendered the statements that were made during the Class Period materially false and misleading; and

(b)      by failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. § 210.4-01(a)(1).

54.      Defendants were required to disclose, in the Company's financial statements, the existence of the material facts described herein and to appropriately recognize and report assets, revenues, and expenses in conformity with GAAP.  The Company failed to make such disclosures and to account for and to report its financial statements in conformity with GAAP. Defendants knew, or were reckless in not knowing, the facts which indicated that all of the Company's interim financial statements, press releases, public statements, and filings with the SEC, which were disseminated to the investing public during the Class Period, were materially false and misleading for the reasons set forth herein.  Had the true financial position and results of operations of the Company been disclosed during the Class period, the Company's securities would have traded at prices well below that which they did.

## ADDITIONAL SCIENTER ALLEGATIONS

55.      As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Royal Caribbean, their control over, and/or receipt and/or modification of Royal Caribbean's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to

30

confidential proprietary information concerning Royal Caribbean, participated in the fraudulent scheme alleged herein.

56.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because: (i) it deceived the investing public regarding Royal Caribbean 's business, operations, management and the intrinsic value of Royal Caribbean securities; (ii) it enabled defendants to artificially inflate the price of Royal Caribbean shares; (iii) it enabled Royal Caribbean insiders to sell tens of millions of dollars of their privately held Royal Caribbean shares while in possession of material adverse non-public information about the Company; and (iv) it caused plaintiff and other members of the Class to purchase Royal Caribbean securities at artificially inflated prices.

**Applicability Of Presumption Of Reliance:**
**Fraud-On-The-Market Doctrine**

57.     At all relevant times, the market for Royal Caribbean 's securities was an efficient market for the following reasons, among others:

(a)     Royal Caribbean's stock met the requirements for listing, and was listed and actively traded on the NYSE national market exchange, a highly efficient and automated market;

(b)     As a regulated issuer, Royal Caribbean filed periodic public reports with the SEC and the NYSE;

(c)     Royal Caribbean regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

31

(d)     Royal Caribbean was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

58.     As a result of the foregoing, the market for Royal Caribbean securities promptly digested current information regarding Royal Caribbean from all publicly available sources and reflected such information in Royal Caribbean stock price. Under these circumstances, all purchasers of Royal Caribbean securities during the Class Period suffered similar injury through their purchase of Royal Caribbean securities at artificially inflated prices and a presumption of reliance applies.

## **NO SAFE HARBOR**

59.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Royal Caribbean who knew that those statements were false when made.

## BASIS OF ALLEGATIONS

60. Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Royal Caribbean, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Royal Caribbean 's business, operations, management and the intrinsic value of Royal Caribbean  securities; (ii) it enabled defendants to artificially inflate the price of Royal Caribbean  securities; (iii) enable Royal Caribbean  insiders to sell tens of millions of dollars of their privately held Royal Caribbean securities while in possession of material adverse non-public information about the Company; and (iv) cause plaintiff and other members of the Class to purchase Royal Caribbean securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

33

63.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Royal Caribbean 's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Royal Caribbean  as specified herein.

65.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Royal Caribbean 's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Royal Caribbean  and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Royal Caribbean securities during the Class Period.

66.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

67.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or omissions were done knowingly or with recklessly for the purpose and effect of concealing Royal Caribbean 's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

68.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Royal Caribbean securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Royal Caribbean 's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Royal Caribbean  securities during the Class Period at artificially high prices and were damaged thereby.

69.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Royal Caribbean  was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Royal Caribbean securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

70.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation Of Section 20(a) Of
The Exchange Act Against Individual Defendants**

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     The Individual Defendants acted as controlling persons of Royal Caribbean within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75.     As set forth above, Royal Caribbean  and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 1, 2011                         s/ Julie Prag Vianale

JULIE PRAG VIANALE
**VIANALE & VIANALE LLP**
Florida Bar No. 184977
jvianale@vianalelaw.com
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone:  (561) 392-4750
Facsimile: (561) 392-4775

KIM MILLER
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Ste. 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

LEWIS KAHN
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

*Attorneys for Plaintiff*